**Opinion issued October 4, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-15-00848-CR**

————————————

**CHRISTOPHER JACK, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 183rd District Court**
**Harris County, Texas**
**Trial Court Case No. 1283618**

---

**MEMORANDUM OPINION**

Christopher Jack was charged with aggravated assault. A jury convicted him

and set his punishment at three years' confinement, probated for five years. On

appeal, Jack contends that (1) legally insufficient evidence exists to support the

judgment, (2) he suffered egregious harm as a result of jury charge error, and (3) the trial court erroneously allowed inadmissible testimony. We affirm.

## BACKGROUND

In October 2012, Ernest Dunn was grilling an evening meal with his family when a white car pulled up near Dunn's house. According to Dunn, Jack got out of the car, walked behind it, and began to beat on a light pole with a tire iron. Jack then struck the white car with the tire iron. The tire iron ricocheted off of the car and landed in Dunn's flower bed.

To retrieve the tire iron, Jack came within 25 feet of Dunn. Dunn's stepson, Marvin Dickens, was standing nearby. Jack asked, "What the fuck are you looking at?" Jack then returned to the passenger side of the car. As the driver pulled away, Jack leaned out of the passenger-side window and said, "I'll be back to kill all you sons of bitches."

About 30 minutes later, Jack returned, waving two tire irons over his head. He yelled, "I'm going to kill all you sons of bitches." Jack approached the gate in Dunn's yard, holding the tire irons with both of his arms raised. Dunn opened the gate, knocked Jack backwards and tackled him. Jack "was flailing" the tire irons as he and Dunn fell to the ground. Dunn received an injury to his head, which was bleeding.

2

Dunn did not recall when he had been hit during the exchange, but testified that he believed that Jack struck him with a tire iron and that he did not otherwise hit his head during the altercation. Dunn testified that a tire iron is a dangerous weapon that could severely hurt someone.

Marvin Dickins testified that when he approached Dunn, Dunn was bleeding on one side of his head above his ear. Dickens stated that Dunn told him: "Get him. He hit me in the head."

Harris County Deputy Salazar testified that Dunn's head injury was consistent with being struck by a metal item and that a tire iron is a deadly weapon. Furthermore, Deputy Salazar testified that an aggressive movement with a tire iron is capable of causing serious bodily injury.

Jack and his girlfriend, Shelby Meeks, offered an alternative version of events. Meeks testified that Jack never hit anything with the tire irons, but merely retrieved the tire irons after he had thrown them into the flower bed. Jack admitted to striking the street light with the tire irons, but maintained that he never struck Dunn or threatened Dunn's family.

# DISCUSSION

## I.  Legal Sufficiency

### A. Standard of Review and Applicable Law

The *Jackson* standard of review for legal sufficiency is whether, after viewing evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). The *Jackson* standard is the only standard that should be applied in determining whether there is sufficient evidence to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). The jury is the exclusive judge of the credibility of witnesses and of the weight to be given to their testimony. *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). Similarly, the reconciliation of conflicts in the evidence is within the exclusive province of the jury. *Id.* In conducting a review for legal sufficiency, we do not reevaluate the weight and credibility of the evidence, but act only to ensure that the jury reached a rational decision. *Muniz v. State*, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993).

Jack argues that there was legally insufficient evidence of any voluntary act, required for an assault. A person commits an offense only if the person voluntarily engages in the conduct. TEX. PENAL CODE ANN. § 6.01 (West 2011). Criminal

4

responsibility for harm must include some act that is voluntary. *Rogers v. State*, 105 S.W.3d 630, 638 (Tex. Crim. App. 2003).

**B. Analysis**

Dunn testified that Jack approached Dunn's house while waving two tire irons and yelling that he was going to kill Dunn's family. Dunn and Dickens testified that Jack used the tire iron to strike Dunn. The credibility of Dunn's testimony is within the exclusive province of the jury. Accordingly, we hold that the evidence supports a finding that Jack voluntarily wielded a tire iron in assaulting Dunn. *See id.* at 638.

Jack further argues that there was legally insufficient evidence to show the requisite mens rea for aggravated assault. Aggravated assault requires a mental state of intentional, knowing, or reckless conduct. TEX. PENAL CODE ANN. §§ 22.01, 22.02 (West 2009). Ernest Dunn testified that Jack yelled that he was going to kill Dunn's family while approaching Dunn with the tire irons raised above his head. Thus, the evidence supports the jury's finding that Jack intended to cause serious bodily injury to Dunn.

Finally, Jack contends that legally insufficient evidence supports a finding that Jack used the tire iron as a deadly weapon or to facilitate the commission of any felony. A deadly weapon is a firearm or anything manifestly designed for the purpose of inflicting death or serious bodily injury, or anything that in the manner

of its use or intended use is capable of causing death or serious bodily injury. TEX. PENAL CODE ANN. § 1.07(a)(17) (West 2011). Both Deputy Salazar and Dunn testified that a tire iron is capable of causing serious bodily injury. Dunn testified that Jack approached him while waving the irons overhead. Thus, the evidence supports the jury's finding that Jack used the tire iron as a deadly weapon.

## II.    Jury Charge Error

Next, Jack argues that egregious harm was caused by the part of the charge that stated "Jack, did then and there unlawfully, intentionally or knowingly cause bodily injury. . . ." He suggests that this portion of the charge gave the jury the impression that they could convict for conduct that was "unlawful" but not intentional or knowing. Additionally, Jack contends he suffered egregious harm from an improper definition of deadly weapon.

### A. Standard of Review

Jack did not raise either of these complaints at trial. We review jury charge errors without any objection raised in the trial court for egregious harm. *Ngo v. State*, 175 S.W.3d 738, 750 (Tex. Crim. App. 2005). Errors resulting in egregious harm are those errors that affect "the very basis of the case", "deprive the defendant of a valuable right", or "vitally affect a defensive theory." *Id.*

**B. Analysis**

The Texas Court of Criminal Appeals has held that a jury charge was not fundamentally defective for including the phrase "appellant did unlawfully, knowingly or intentionally abduct another person" where the charge defined kidnapping as intentionally or knowingly abducting another person and did not define unlawfully. *Huddleston v. State*, 661 S.W.2d 111, 113 (Tex. Crim. App. 1983). Similarly, in this case, the abstract portion of the jury charge defines aggravated assault as intentionally or knowingly causing bodily injury to another while using or exhibiting a deadly weapon. The jury charge defines knowingly and intentionally but does not define unlawfully. Following *Huddleston*, we hold that in light of the charge as a whole, there is no egregious harm caused by including the word "unlawfully."

Jack contends that the charge erroneously defined deadly weapon as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury," because the evidence conclusively showed that his intent was either nonexistent or negated. The definition of deadly weapon correctly tracks the statutory language of section 1.07(a)(17)(B). *See* TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (West 2011). The record reveals that Jack yelled that he was about to kill Dunn's family while waving the tire irons overhead. Evidence in

the record thus supports the submission of "intended use" of a tire iron as a deadly weapon.

## III.   Evidentiary Ruling

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010).  A trial court abuses its discretion only if its decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008).  A trial court does not abuse its discretion if some evidence supports its decision.  *Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002).

Jack objected in the trial court to Dunn's testimony that the tire iron could severely hurt someone on the grounds that the testimony was speculative, but on appeal, he complains that the testimony was irrelevant.  If an objection made in the trial court differs from the complaint made on appeal, however, a defendant has not preserved any error for review.  *Thomas v. State*, 723 S.W.2d 696, 700 (Tex. Crim. App. 1986).  Because Jack's complaint on appeal does not comport with his objection below, he has not preserved it for review.  *See id.*  In addition, the same evidence was admitted through Deputy Salazar without objection: he testified that a tire iron as used in this case was capable of causing serious bodily injury.  This

renders harmless any improper admission of evidence. *See Leday v. State*, 983 S.W.2d 713, 717–18 (Tex. Crim. App. 1998).

Jack further argues that the court erred in permitting Dickens to testify that Dunn said, "Get him. He hit me in the head" under the excited utterance exception to the hearsay rule. Jack claims that Dunn did not immediately state it and no independent evidence of the occurrence exists.

An excited utterance is a statement relating to a startling event or condition, made while the declarant was under the stress of excitement that caused it. TEX. R. EVID. 803(2). The excited utterance exception renders admissible testimony that would otherwise be excluded by the rule against hearsay regardless of whether the declarant is available. *Id.*

Time is a factor in determining whether a statement is an excited utterance, and the critical determination is "whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event." *Zuliani v. State*, 97 S.W.3d 589, 596 (Tex. Crim. App. 2003). In *Zuliani*, a statement made twenty hours after an altercation with the defendant was still an excited utterance, where the victim was still dominated by the emotions, excitement, fear, or pain of the event. *Id.*

In this case, Dickens testified that Dunn made the statement while Dunn was holding Jack down with Dunn's arm around Jack's neck and while Jack was trying

to escape.  We hold that the trial court reasonably could have concluded that Dunn was dominated by the emotions of the event when he made the statement.

Jack's complaint concerning the lack of independent evidence is also unavailing.  Although the common-law res gestae rule required independent evidence, Rule 803(2) modified the common-law rule to eliminate that requirement.  *Coble v. State*, 330 S.W.3d 253, 294 (Tex. Crim. App. 2010).  Instead, the trial judge decides whether there is sufficient evidence to prove an exciting event. *Id.*

Dickens testified that the moment of the declaration was stressful for Dunn because Dunn was holding Jack down by the neck, Jack was trying to escape, and Dunn's head was bleeding.  This evidence is sufficient to support a finding of a startling event.

Jack also argues that the admission of the excited utterance violates the Confrontation Clause.  At trial, Jack objected to the excited utterance on the ground of hearsay, but did not object based on the Confrontation Clause.  An objection on the basis of hearsay does not preserve error as to any violation of the Confrontation Clause.  *Reyna v. State*, 168 S.W.3d 173, 179-80 (Tex. Crim. App. 2005).  Accordingly, we hold that Jack has waived any Confrontation Clause argument.

## Conclusion

We hold that legally sufficient evidence supports the judgment. We further hold that Jack has not demonstrated reversible error based on his challenges to the jury charge and the admission of evidence.  We therefore affirm the judgment of the trial court.


Jane Bland
Justice

Panel consists of Justices Bland, Massengale, and Lloyd.

Do not publish.  TEX. R. APP. P. 47.2(b).